1  Christopher E. Ng, Esq. (CSB # 216969)
   cng@gibbsgiden.com
2  Richard E. Haskin, Esq. (CSB # 218796)
   rhaskin@gibbsgiden.com
3  **GIBBS GIDEN LOCHER TURNER**
   **SENET & WITTBRODT LLP**
4  1880 Century Park East, 12th Floor
   Los Angeles, California 90067-1621
5  (310) 552-3400

6  Attorneys for Debtor, PB-6, LLC

7

8              **UNITED STATES BANKRUPTCY COURT**

9    **CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY**

10                           **DIVISION**

11

12 | IN RE:                          | BK Case No.:  1:21:bk:10293-MT
13 | PB-6, LLC,                      | CHAPTER 11
14 |        Debtor.                  |
15 |                                 | ADV. NO.
   | PB-6, LLC, a California limited liability | **ADVERSARY COMPLAINT FOR:**
16 | company,                        |
17 |          Plaintiff,             | 1. **Declaratory Relief;**
                                       2. **Fraud – Intentional**
18 | vs.                             |    **Misrepresentation**
                                       3. **Violation of Bus. and Cal. Prof.**
19 | RSE CAPITAL PARTNERS, LLC;       |    **Code § 17200 et, seq.**
   | FUNDRISE LENDING, LLC; FUNDRISE | 4. **Disallowance of Claim under**
20 | WEST COAST OPPORTUINISTIC REIT,  |    **Bank. Code § 502(b)**
   | LLC; FIDELITY NATIONAL TITLE     |
21 | COMPANY;                        |
22 |                                 |
   |          Defendants.            |
23 |                                 |
24
25

26        COMES NOW, Debtor and Plaintiff (in the adversary proceeding) PB-6, LLC

27 ("PB-6") submits it Complaint as follows:

28

2409794.3

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

## JURISIDICTION AND VENUE

1.    PB-6 filed its voluntary Chapter 11 Petition on February 23, 2021.

2.    The Court has jurisdiction over the subject matter of these claims pursuant to 28 U.S.C. §1334 as the issues and controversies set forth in this Complaint are related to the bankruptcy proceeding because the outcome could have an effect on the estate being administered in bankruptcy and could alter PB-6's rights, liabilities options or freedom of action.

3.    Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because a substantial part of the events giving rise to the claims alleged herein occurred within the district as more specifically described herein.

## PARTIES

4.    PB-6 is a limited liability company organized under the laws of the State of California, qualified to do and doing business in California and with its principal place of business located within the jurisdiction of this Court.

5.    Defendant RSE Capital Partners, LLC ("RSE") is a limited liability company organized under the laws of the State of Delaware.  Defendant is informed and believes, and thereon alleges, that RSE is not registered to conduct business in the State of California.  RSE is a real estate investment company that develops, acquires, and finances real estate properties.

6.    Defendant FUNDRISE LENDING, LLC ("Fundrise") is a limited liability company organized under the laws of the State of Delaware, qualified to do and doing business in California.  Fundrise is a licensed finance lender in the State of California that facilitates real estate loans.

7.    Defendant FUNDRISE WEST COAST OPPORTUINISTIC REIT, LLC ("Fundrise REIT") is a limited liability company organized under the laws of the State of Delaware, qualified to do and doing business in California.  Fundrise REIT is a real estate investment trust program that invests in real estate in California and on the West Coast of the United States.

2409794.3

8.     PB-6 is informed and believes, and thereon alleges, that RSE was formerly a division of Fundrise that in or about November 2016, was spun off into a stand-alone company to focus on originating, underwriting, investing, and managing Fundrise's real estate investments.

9.     For the purposes of this Complaint, RSE, Fundrise, and Fundrise REIT shall be collectively referred to as the "Lenders."

10.    Defendant FIDELITY NATIONAL TITLE COMPANY, INC. ("Fidelity") is a corporation organized under the laws of the State of California, qualified to do and doing business in California, with its principal place of business located at 3210 El Camino Real, Suite 200, Irvine, California 92602.

11.    At all times mentioned herein, each of the Defendants was the agent and employee of each of the remaining Defendants, and was, in doing the things herein complained of, acting within the course and scope of such agency and employment.

## SUMMARY OF THE FACTS UNDERLYING THE ACTION

12.    PB-6 is the owner of the real property located at 5137 and 5145 through 5149 Colfax Avenue, Valley Village, California 91601 (the "Property").

13.    PB-6 purchased the Property in separate parcels between January and June 2015.  PB-6 intended to develop the same by constructing a 12-home small lot subdivision using modular buildings (the "Project").  A modular building is a prefabricated building that consists of repeated sections called modules.  Modularity involves constructing sections away from the building site, then delivering them to the intended site.  Installation of the prefabricated sections is completed on site.

14.    By 2017, PB-6 had completed its subdivision of the Property.

15.    In November 2017, PB-6 contacted RSE about obtaining approximately $3,000,000.00 in *bridge financing* to repay certain high interest acquisition debt.

16.    On or about November 10, 2017, PB-6, on the one hand, and RSE, on the other, executed a Letter of Intent whereby RSE agreed to loan PB-6 $3,000,000.00 as senior debt, with a 2.0% origination fee for a one (1) year term with a single six (6)

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

month extension at the borrower's option.  Interest was to be fixed at 10%, with an increase of 11% additional percentage points during the extension period.  Finally, the loan was to be secured by the Property as well as personal guarantees from PB-6's principals.

17.    The parties also discussed a construction loan to fund the building of the Project once the bridge financing was in place and PB-6 was able to obtain permits for the building of the Project.

18.    On or about November 21, 2017, PB-6's representative were asked to visit the Lender's attorneys' office in Phoenix, Arizona in order to execute the loan documents. On November 21, 2017, the PB-6 principals personally executed the loan documents, including the Promissory Note consistent with the terms set forth in the LOI (the "First Note").  PB-6 was never provided with a copy of the First Note or any of the loan documents PB-6 executed despite repeated requests therefor.

19.    Almost immediately after November 21, 2017, PB-6 was contacted by the Lenders who told PB-6 the Lenders had a last second change to the loan, which would be "cut to rate and term," with a loan amount reduction from $3,000,000.00 to $2,650,000.00.  PB-6, who had obtained loan payoff amounts from acquisition lenders and promised these lenders prompt payoffs from the First Note proceeds, had no choice but to proceed with the revised loan amount.  As a result, PB-6 executed a revised set of loan documents for the First Note.

20.    The First Note was funded and escrow closed on or about November 28, 2017.

21.    The principal amount due on the First Note was $2,650,000.00.

22.    The First Note was personally guaranteed by PB-6's principals, Adam Goldberg ("Goldberg") and Brian Peters ("Peters").

23.    Almost immediately after executing the First Note, RSE sent PB-6 a Letter of Intent related to a $7,000,000.00 plus construction loan (the "Construction LOI").  The Construction LOI was premature because PB-6 was nowhere close to

2409794.3

1   commencing the Project in that it did not have permitting to do so and was still in the

2   process of selecting and getting commitments from modular manufacturers.

3       24.    In or about April 2018, PB-6 defaulted under the terms of the First Loan

4   because it did not commence interest payments on the loan, which became due

5   November 27, 2018.  Despite the lack of interest payments, RSE told PB-6 the

6   Lenders would forgive the late interest payments if it immediately entered into the

7   much-discussed construction loan.  PB-6 told the Lenders the construction loan was

8   premature because PB-6 had not yet obtained final permits and had not received firm

9   commitments from module manufacturers.  Nevertheless, RSE told PB-6 it had until

10   April 2, 2018, to enter into a construction loan with the Lenders or a notice of default

11   would issue, which meant foreclosure and judgment against the individual guarantors.

12       25.    On or about April 6, 2018 and in order to avoid default and foreclosure

13   on the First Note and judgment against the guarantors, PB-6 entered into a

14   Construction Loan Agreement with Fundrise (through RSE) in the original principal

15   amount of $8,120,000.00 (the "Second Note"), which was secured by a Deed of Trust,

16   dated April 6, 2018, and record in Los Angeles County on April 9, 2018, as

17   Instrument No.20180338122, granting Fundrise a lien on the Property, which was

18   assigned by Fundrise to Fundrise REIT by an Assignment of Deed of Trust,

19   Assignment of Leases and Rents, Security Agreement and Fixture Filing, dated April

20   6, 2018, and recorded in Los Angeles County, California as Instrument No.

21   20180354826 (as assigned, the "Deed of Trust").  The Second Note was, again,

22   personally guaranteed by Goldberg and Peters.

23       26.    Further, as consideration for the Second Note, Fundrise required PB-6 to

24   pay $425,000.00 to close on this new loan and avoid foreclosure.

25       27.    Included in the Second Note **after its execution** and as an addendum was

26   a Construction Milestone schedule setting forth dates when the Project had to reach

27   certain construction milestones, *e.g.* demolition, choice of module manufacturer,

28   purchasing of modular homes, etc.  Once more, the Second Note contained certain

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

5

2409794.3

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

1  restrictions that made compliance with the milestones impossible, including the

2  mandate of using only one module home manufacturer. PB-6 did not have the

3  opportunity to review this Construction Milestone schedule prior to signing the

4  Second Note as it was never provided to PB-6. Had PB-6 reviewed the schedule, PB-

5  6 never would have agreed to the it given the PB-6's knowledge of the timing of

6  construction and the state of the Project at that point. The Construction Milestones

7  were unrealistic and, frankly, impossible given PB-6 did not even have permits and

8  had not selected a module manufacturer. The unrealistic nature of the schedule was

9  known to the Lenders because the schedule was the constant subject of discussions

10  and communications surrounding the construction loan.

11      28.    On or about November 1, 2018, the Lenders provided PB-6, Goldberg

12  and Peters with a draft Loan Modification Agreement. The purported purpose of the

13  Loan Modification Agreement was (1) to have PB-6, Goldberg and Peters reaffirm

14  purported obligations under the Second Note, (2) to adjust the construction milestone

15  schedule, and (3) to limit and restrict funding by Fundrise under the Second Note. In

16  actuality, the Lenders' unspoken purpose of the Loan Modification Agreement was to

17  create more favorable default terms in an effort to leverage PB-6.

18      29.    The Loan Modification Agreement was prepared by Fundrise's counsel

19  and presented to PB-6 principals at a meeting at Fundrise's counsel's office. Fundrise

20  and Fundrise REIT demanded PB-6 execute the Loan Modification Agreement or face

21  immediate default. The Lenders included a modified Construction Milestone schedule

22  that PB-6 was not allowed to significantly review or negotiate. The renewed

23  Construction Milestone schedule was still grossly unrealistic. The Lenders knew the

24  milestones were unrealistic because they had been speaking with PB-6's principals for

25  weeks about how the milestones were impossible to satisfy.

26  ///

27  ///

28  ///

2409794.3

30.    On or about July 19, 2018, RSE informed PB-6 it was stopping all funding on the Second Note because PB-6 missed seven (7) construction milestones. RSE instructed PB-6 to continue with the Project "at its own expense," and RSE would review future draw requests to see if reimbursement was appropriate.

31.    In or about September 2019, permits were ready to issue to PB-6 on the Project.  Due to lack of communication from RSE, PB-6 was unable to pay for the permits, and this caused a substantial delay.

32.    In or about January 2020, RSE became unresponsive to PB-6 and its attempts to communicate about moving forward.

33.    In or about February 2020, after several weeks of simply not communicating, RSE informed PB-6 it was refusing to fund construction due what RSE claimed was a *loss of confidence* in PB-6 to perform.

34.    On or about September 30, 2020, RSE served a Notice of Default on PB-6, a true and correct copy of which is attached as **Exhibit 1** and incorporated by reference.

35.    On or about February 21, 2021, RSE recorded a Notice of Trustee's Sale with the Los Angeles County Recorder's Office, a true and correct copy of which is attached as **Exhibit 2** and incorporated by reference.

36.    On or about February 23, 2021, PB-6 filed for Chapter 11 Bankruptcy protection in the California Central Bankruptcy Court, Case No. 1:21-bk-10293.

37.    This Court lifted the automatic bankruptcy stay as to the Lenders following a hearing on their petition to lift such stay.  The Lenders are now permitted to foreclose on the Property.

## **FIRST CAUSE OF ACTION**

### **(Against All Defendants For Declaratory and Injunctive Relief)**

38.    PB-6 repeats and realleges paragraphs 1 through 37, as though fully set forth herein.

///

2409794.3

39.     An actual, present and justiciable controversy has arisen between PB-6, on the one hand, and the Lenders and Fidelity, on the other, concerning the right of the Lenders (through Fidelity) to foreclose on the Property without serving a renewed Notice of Default and Notice of Trustee's Sale.

40.     In the present case, the Notice of Default is stale under California law, and the Lenders are required to re-record and post a renewed Notice of Default and have failed to do so.  As such, the trustee's sale cannot proceed.  The Lenders contest that the Notice of Default is, indeed, stale.

41.     PB-6 seeks declaratory judgment from this Court that the Notice of Default is stale and a preliminary injunction preventing the trustee's sale from moving forward without Defendants re-serving a Notice of Default and recording a new Notice of Trustee's Sale.

## SECOND CAUSE OF ACTION

### (Against All Defendants for Fraud – Intentional Misrepresentation, Against The Lenders)

42.     PB-6 repeats and realleges paragraphs 1 through 41, as though fully set forth herein.

43.     Defendants, and each of them, made several misrepresentations as set forth above in order to induce PB-6 to enter into the Second Note, with the end goal being to gain leverage over PB-6 with the end goal being to foreclose on the Project and the Property.

44.     Specifically, despite knowing the status of the Project in late 2018, the Lenders continued to push PB-6 to enter into the Second Note to fund the construction of the Project.  The Lenders knew through several discussions with PB-6 and its principals that a construction loan was premature and the Project was in no position to commence having not yet even received permitting.

///

///

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

2409794.3

45. Despite the premature state of the Project, the Lenders threatened to foreclose on the First Note if PB-6 did not enter into the construction loan (covered by the Second Note).

46. Once more, after the Second Note was executed by the parties, the Lenders added a Construction Milestone schedule as an addendum to the Second Note without disclosing this schedule to PB-6 beforehand. The Construction Milestones were impossible to achieve, and the Lenders knew this fact through discussions with PB-6. The intent of the onerous if not impossible Construction Milestones were to put PB-6 into an immediate state of default so the Lenders could either leverage PB-6 into more onerous loan terms (via the Loan Modification Agreement) or foreclose on the Property.

47. The Lenders, and each of them, knew their representations were false.

48. The Lenders, and each of them, intended to defraud PB-6 and induce PB-6's reliance on the Lenders' misrepresentations.

49. PB-6 justifiably relied on the misrepresentations by the Lenders and entered into the Second Note and Loan Modification Agreement.

50. Defendants' conduct caused PB-6 damages in excess of $1,000,000.00, to be proven at trial.

51. Th Lenders conduct will also cause PB-6 irreparable harm unless the Lenders are enjoined from such further conduct because the Lenders seek to foreclose on the Property and deprive PB-6 with its rights thereto.

### **THIRD CAUSE OF ACTION**

**(Against The Lenders for Violation of**

**Cal. Bus. & Prof. Code §§ 17200, et. seq.)**

52. PB -6 repeats and realleges paragraphs 1 through 51, as though fully set forth herein.

///

///

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

2409794.3

53.     California Business and Professions Code section 17200 et seq. (the "Unfair Competition Law" or "UCL") prohibits any unlawful, unfair or fraudulent business act or practice.

54.     At all times mentioned herein, the Lenders engaged in fraudulent conduct as alleged specifically in Paragraphs 12 through 37, and 43 through 51 herein.

55.     At all times mentioned herein, the Lenders engaged in unfair business practices because the Lenders conduct was immoral, unethical, oppressive, unscrupulous and substantially damaging to PB-6.  Specifically, the damaging conduct includes, but is not limited to, the following:

    a.     Intentionally not disclosing the Construction Milestone schedule prior to or upon the execution of the Second Note.

    b.     Proposing unrealistic construction milestones given the Lenders actual knowledge of the state of the Project at the time the Second Note and Loan Modification Agreement were entered into.

    c.     Using the Lender's leverage position through default to better the Lender's position.

56.     As a direct and proximate result of the Lender's wrongful acts, PB-6 suffered losses as described herein and in amount in excess of $1,000,000.00, to be proven at trial.

57.     The Lender's conduct will also cause PB-6 irreparable harm unless Defendants are enjoined from such further conduct because the Lenders seek to foreclose on the Property and deprive PB-6 with its rights thereto.

## FOURTH CAUSE OF ACTION

### (For Disallowance of Claim Against the Lenders)

58.     PB -6 repeats and realleges paragraphs 1 through 57, as though fully set forth herein.

///

///

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

2409794.3

59.    Section 502(b) of the Bankruptcy Code disallows claims that are unenforceable against the debtor and under Section 502(d) which disallows claims by creditors which are offset by claims by the debtor against the creditor.

60.    For the reasons set forth above, PB-6 has a claim against the Lenders that offsets any claim by the Lenders made in the bankruptcy proceeding.  As such, the Lender's claims in bankruptcy should be disallowed.

WHEREFORE, PB-6 hereby demands a jury trial and prays for judgment against Defendants, and each of them, as follows:

### FIRST CAUSE OF ACTION

1.  For a declaratory judgment in favor of PB-6 and against Defendants;

2.  An order the Defendants, their agents, employees, and directors are enjoined from foreclosing on the Property unless and until a new Notice of Default is served and a Notice of Trustee's Sale is recorded in compliance with California law;

### SECOND CAUSE OF ACTION

3.    For damages in the sum of not less than $1,000,000, plus interest;

4.    For an award of punitive damages;

5.    An order the Defendants, their agents, employees, and directors are permanently enjoined from foreclosing on the Property;

### THIRD CAUSE OF ACTION

6.    For damages in the sum of not less than $1,000,000, plus interest;

7.    For an award of punitive damages;

8.    For restitution and treble damages pursuant to California Civil Code section 3345;

9.    An order the Defendants, their agents, employees, and directors are permanently enjoined from foreclosing on the Property;

10.    For costs of suit including reasonable attorneys' fees.

///

GIBBS GIDEN LOCHER TURNER SENET & WITTBRODT LLP

2409794.3

1

## **FOURTH CAUSE OF ACTION**

2          11.    For an order from this Court disallowing CalPac and Med Equity's

3  claims in bankruptcy.

4

5  DATED:  April 7, 2022                    GIBBS GIDEN LOCHER TURNER
                                            SENET & WITTBRODT LLP
6

7                                    By: _____

8                                         Christopher E. Ng, Esq.
                                          Richard E. Haskin, Esq.
9                                         Attorneys for Debtor, PB-6, LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2409794.3

# EXHIBIT "1"

# Ballard Spahr
### LLP

---

1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
TEL 602.798.5400
FAX 602.798.5595
www.ballardspahr.com

Craig S. Ganz
Tel: 602.798.5427
Fax: 602.798.5595
ganzc@ballardspahr.com

September 30, 2020

*Via FedEx and E-mail*

Adam Goldberg
3606 Berry Drive
Studio City, CA 91604
Email: adam@peterberginc.com

Brian Peters
5397 Via Andrea
Newbury Park, CA 91230
Email: brian@peterberginc.com

PB 6 LLC
3401 Grande Vista Drive, No. 672
Newbury Park, CA 91319
Attn: Adam Goldberg
Email: adam@peterberginc.com

Re:    Guaranty Agreement dated as of April 6, 2018 (the "Guaranty") executed by Brian Peters
       and Adam Goldberg (collectively, "Guarantor"); Construction Loan Agreement dated as of
       <u>April 6, 2018– **NOTICE OF DEFAULT**</u>

Dear Adam and Brian:

As you are aware, this firm is counsel for Fundrise West Coast Opportunistic REIT, LLC ("Fundrise").
Effective as of April 6, 2018, Fundrise (as successor-in-interest to Fundrise Lending, LLC), as lender,
and PB 6 LLC ("PB"), as borrower, executed a Construction Loan Agreement (the "Agreement") in
the principal amount of $8,120,000.00 for the purposes of constructing twelve single family homes on
the real property generally located at 5137 & 5145-5149 Colfax Avenue, Valley Village, CA 91601
evidenced by *inter alia* a Promissory Note, also dated April 6, 2018 executed by PB in favor of Fundrise
(the "Note") with a maturity date of April 6, 2020 (the "Maturity Date"). Capitalized terms used, but
not defined herein, shall have the meaning set forth in the Agreement and the Note (as applicable).

Guarantor provided the Guaranty to Fundrise pursuant to which Guarantor unconditionally guarantees
the full and timely payment of the Guaranteed Obligations (as defined in the Guaranty).

Pursuant to Section 2(c) of the Note, Borrower was required to make, on or before the Maturity Date,
one (1) final "balloon" payment of the entire unpaid Principal Amount, all accrued and unpaid interest

Adam Goldberg
Brian Peters
PB 6 LLC
September 30, 2020
Page 2

and any other amounts due under the Note. Borrower failed to timely make the aforementioned required balloon payment by the Maturity Date, constituting an "Event of Default" under the Note and the other Loan Documents. Borrower further failed to cure such nonpayment in accordance with the demand set forth in that certain Notice of Default dated April 7, 2020.

In addition, Borrower has failed to pay all Impositions in violation of Section 3.02 of the Security Instrument and Section 5.4 of the Agreement. Fundrise hereby demands pursuant to Section 9.1(b) of the Agreement that Guarantor and/or Borrower cure such nonpayment within ten (10) days after its receipt of this notice (*i.e.,* by October 10, 2020).

I understand from conversations with your counsel that PB intends to file for bankruptcy in the event that Fundrise pursues its rights and remedies under the Loan Documents arising from the aforementioned Events of Default. Note that the filing of bankruptcy by Borrower or any Guarantor constitutes a "Springing Recourse Event" under the Guaranty, which would cause Guarantor to be liable for repayment in full of the Note (Guaranty, Exhibit A, Definitions of "Guaranteed Obligations" and "Springing Recourse Event").

Fundrise hereby demands that Borrower and Guarantor not trigger a "Springing Recourse Event" under the Guaranty or take any action that would result in a fraudulent conveyance under applicable laws.

As there may be other existing or potential Events of Default, other than the Events of Default described in this Notice, Lender and Agent hereby reserve and preserve any and all of its rights and remedies under the Loan Documents and applicable law with regard to any existing or potential Event of Default under the Loan Documents, and/or the right to demand payment of such additional amounts or performance of such other obligations.

Neither this Letter, any discussions by Lender with Borrower or its representatives, nor Lender's acceptance and/or application of any payments made pursuant to the Loan Documents or any payment of less than the full amount due and payable under the Loan Documents, constitutes (a) a waiver by Lender or Agent of any breach or Event of Default by Borrower under the Loan Documents, whether or not referred to in this letter or in any prior notice, (b) an election by Lender or Agent of remedies with respect to any such breach or Event of Default, it being understood that Lender and Agent hereby reserve all rights and remedies available at law, in equity or under the Loan Documents, (c) a waiver, modification, relinquishment or forbearance by Lender or Agent of any rights or remedies available at law, in equity or under the Loan Documents, all of which are reserved by Lender and Agent, (d) a modification of any of the Loan Documents, or (e) an agreement by Lender or Agent to take other action in addition or similar to the action specified herein or to continue discussions with Borrower. All time of the essence clauses in the Loan Documents are hereby reaffirmed, and time is of the essence with respect to all obligations of Borrower.

No modification of the Loan Documents and no other agreement or understanding of any nature shall be deemed to have been entered into by or be binding on Lender or Agent unless and until Lender,

Adam Goldberg
Brian Peters
PB 6 LLC
September 30, 2020
Page 3

Agent and Borrower have reached agreement on all issues, and such entire agreement has been reduced to a written document that expressly modifies the Loan Documents and is duly executed by Lender, Agent, Borrower and Guarantor. Oral agreements, emails, memoranda of meetings, summaries of proposed terms, or other similar items, shall have no effect and shall not bind Lender or Agent.

We also hereby serve notice and make demand on PB and Guarantor to preserve all documents and information[1] related to potential litigation that may arise from the Loan or any Events of Default (the "Anticipated Litigation").

By this letter, you are hereby given notice not to destroy, conceal, or alter any paper or electronic files and other data generated by and/or stored on your computers and storage media (e.g., hard disks, floppy disks, backup tapes), or any other electronic data, such as voice mail. Your failure to comply with this notice can result in severe court sanctions being imposed and liability for spoliation of evidence or potential evidence.

Although Fundrise may bring a motion for an order preserving documents and things from destruction or alteration in the Anticipated Litigation, PB's and Guarantor's obligation to preserve documents and things for discovery in regard to the Anticipated Litigation arises in law and equity independently from any order on such motion.

The duty to preserve is directed to "relevant" information. Such information includes documents directly discussing or bearing on the matter in dispute. It also includes information regarding the existence, description, nature, custody, condition, and location of documents and tangible things and the identity and location of persons having knowledge of discoverable information. Information may be required to be preserved even if it is not admissible at a trial or other legal proceedings, if it may reasonably lead to the discovery of admissible evidence.

The duty to preserve extends to Guarantor, PB and their individual employees who are likely to have discoverable information. The duty to preserve also extends to information that may be relevant to the claims or defenses of any other party or that is relevant to the subject matter involved in the Anticipated Litigation.

This notice and demand are made, *inter alia*, to ensure that there is no destruction of relevant evidence maintained by computer systems since electronic evidence may be inadvertently altered, deleted, or otherwise modified. The failure to preserve and retain this electronic data may, under the

---

[1] "Documents and information" is interpreted very broadly. It includes all forms of electronically-stored information as well as paper and other tangible forms of documents and records. Electronically-stored information includes, but is not limited to, computer files, e-mails, electronic images, graphs and spreadsheets, electronic databases, electronic system usage logs, Internet history and cache files, electronic contact lists and calendars, voicemails, information in personal digital assistants (Blackberries, Palms, and other such organizers), and information in equipment that stores – permanently or temporarily – such information about its operation. It does not matter in what format the information is stored (i.e., a computer hard drive, mobile phone, CD-ROM, DVD-ROM, tape, backup media, or any other format capable of storing electronic information).

Adam Goldberg
Brian Peters
PB 6 LLC
September 30, 2020
Page 4

circumstances of the Anticipated Litigation, constitute spoliation of evidence and could subject PB, Guarantor, and others to legal claims for damages, as well as evidentiary and monetary sanctions.

Please note that a printout to paper form of text from an electronic file will NOT preserve all information in an electronic file, and will not suffice to answer discovery requests. Consequently, please consider this letter as notice of the following safeguards to maintain information and protect against destruction of evidence until further notice, agreement among the parties, or court order.

1.  Please preserve electronic data no matter whether this data is located on a central server, individual workstation, a laptop, or a mobile data device including:

    (i)     all electronic mail and information sent or received by you and/or any employees or agents involved in any aspect of the matters that give rise to the Anticipated Litigation;

    (ii)    all other electronic mail and information about electronic mail containing information about the matters that give rise to the Anticipated Litigation;

    (iii)   all databases, and fields, as well as structural information containing information about the matters that give rise to the Anticipated Litigation;

    (iv)    all computer logs used to process electronic data concerning the matters that give rise to the Anticipated Litigation;

    (v)     all word processing files and spreadsheet files, as well as file fragments containing information about the matters that give rise to the Anticipated Litigation;

    (vi)    all files and file fragments containing information of electronic calendars, word processing files, electronic notes, journal entries, and/or correspondence concerning the matters that give rise to the Anticipated Litigation;

    (vii)   all electronic data files and file fragments created by electronic spreadsheet programs with data files as general information about the operations of the LLCs;

    (viii)  all on-line data storage on servers, main frames, and mini-computers;

    (ix)    all off-line data storage, including back-ups and archives, zip drives, zip files, removable electronic media, compact discs, and floppy diskettes;

    (x)     all logins and passwords to access the information above.

2.  Please do not dispose of any electronic data, storage devices, and/or media that may otherwise be replaced due to failure or upgrade.

3.  Please do not alter or erase any electronic data on fixed drives, on stand-alone personal computers, and on network work stations.

4.  Please preserve all copies of application programs and utilities used to process electronic data.

5.  Please maintain an activity log to document modifications made to electronic data processing systems that may affect the systems' capability to process electronic data.

Adam Goldberg
Brian Peters
PB 6 LLC
September 30, 2020
Page 5

6.  Please maintain all information on personal computers used by any other person involved in the subject matter of the Anticipated Litigation as well as their secretaries, personal assistants, etc.

7.  Please collect all floppy diskettes, compact disks, magnetic tapes and cartridges, and other media used with computers and place them in secure storage.

Please do not hesitate to contact me should you have questions about this request.

Very truly yours,

Craig S. Ganz

CSG/jtp

*cc (via FedEx and Email)*

Michael I. Gottfried
Elkins Kalt Weintraub Reuben Gartside LLP
10345 W. Olympic Blvd.
Los Angeles, CA 90064
Email: MGottfried@elkinskalt.com

# EXHIBIT "2"

Default Resolution Network
PO Box 9009
Temecula, CA 92589-9009



2358828363

PRESORT
First-Class Mail
U.S. Postage and
Fees Paid
WSO

20210202-88

MICHAEL I. GOTTFRIED
ELKINS KALT WEINTRAUB RUEBEN GARTSIDE
LLP
10345 W. OLYMPIC BLVD.
LOS ANGELES, CA 90064



CANOS

2358828363

**This page is part of your document - DO NOT DISCARD**



## 20210180195



**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**02/02/21 AT 08:00AM**

| | |
|---|---|
| FEES: | 30.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 105.00 |



**L E A D S H E E T**



202102020250005

**00019824351**



011763266

**SEQ:**
**01**

**SECURE - 8:00AM**



**THIS FORM IS NOT TO BE DUPLICATED**



E493367

E08_210201_05-2880 

FOR REFERENCE ONLY: 20210180195

Recording Requested by
**Synrgo fka SPL**

and When Recorded Mail to:

FIDELITY NATIONAL TITLE COMPANY
1101 Investment Blvd., Suite 170
El Dorado Hills, CA 95762

---

**Trustee Sale No. 20-00174-2   Loan No: 158/PB 6, LLC**
**APN 2355-005-037 and 2355-005-038**

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING DATED APRIL 6, 2018. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On February 24, 2021, at 11:00 AM, by the fountain located at 400 Civic Center Plaza, Pomona, CA 91766, FIDELITY NATIONAL TITLE COMPANY, as the duly appointed Trustee (the "Trustee"), under and pursuant to the power of sale contained in that certain Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing recorded on April 9, 2018, as Instrument No. 20180338122 of official records in the office of the Recorder of Los Angeles County, CA, executed by: PB 6 LLC, a California limited liability company, as Trustor (the "Trustor"), in favor of Fundrise Lending, LLC, a Delaware limited liability company, as Beneficiary, and any modifications thereto are collectively referred to herein from time to time as the "Deed of Trust", WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as:

LOTS 181 AND 182 OF TRACT NO. 7378, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 110, PAGES 83 AND 84 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**NOTICE TO POTENTIAL BIDDERS:** If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the Property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the Property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the Property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this Property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the Property.

**NOTICE TO PROPERTY OWNER:** The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California

Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this Property, you may call **1.866.684.2727** or visit this Internet Website **www.servicelinkasap.com**, using the file number assigned to this case **20-00174-2**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Website. The best way to verify postponement information is to attend the scheduled sale.

The real Property heretofore described is being sold "as is". The street address and other common designation, if any, of the real Property described above is purported to be:

5137 & 5145-5149 Colfax Avenue, Valley Village, CA

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining unpaid balance of the obligations secured by and pursuant to the power of sale contained in that certain Deed of Trust (together with any modifications thereto).

The total amount of the unpaid balance of the obligations secured by the Property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $4,381,682.24 (Estimated), provided, however, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The Property offered for sale excludes all funds held on account by the Property receiver, if applicable.

DATE: January 29, 2021

**FIDELITY NATIONAL TITLE COMPANY, TRUSTEE**
20-00174-2
1101 Investment Blvd., Suite 170
El Dorado Hills, CA 95762
916-636-0114

Jenny Taylor/Authorized Signor

**SALE INFORMATION CAN BE OBTAINED ON LINE AT www.servicelinkasap.com**
**AUTOMATED SALES INFORMATION PLEASE CALL 1.866.684.2727**

